COPY

1  ROBERT M. DOHRMANN, ESQ. (33365)
   SCHWARTZ, STEINSAPIR, DOHRMANN & SOMMERS LLP
2  Attorneys at Law
   6300 Wilshire Boulevard
3  Suite 2000
   Los Angeles, California 90048-5202
4
   Telephone:  (323) 655-4700
5  Facsimile:  (323) 655-4488
   e-mail:  rmd@ssdslaw.com
6
   Attorneys for Plaintiffs
7  VIRGINIA MULLOY, AL CHAVEZ AND THOMAS RABONE

8

9                UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11                    EASTERN DIVISION

12

13  VIRGINIA MULLOY, AL CHAVEZ        NO.  CV09-4432 ODW FMOx
    AND THOMAS RABONE, as Trustees
14  of the CUSHENBURY MINE TRUST,     COMPLAINT FOR
                                      DECLARATORY RELIEF
15             Plaintiffs,
                                      (28 USC § 2201; Fed.R.Civ.Proc. 57)
16       vs.

17  MITSUBISHI CEMENT
    CORPORATION, a Nevada
18  Corporation,

19             Defendant.

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF
                                                                    (28 USC § 2201; Fed.R.Civ.Proc. 57)

Plaintiffs allege:

## **INTRODUCTION**

1.      Plaintiffs are the current Trustees of the Cushenbury Mine Trust ("CMT") who seek a declaration by this Court whether they, as Trustees, must meet certain recent demands of Defendant Mitsubishi Cement Corporation ("MCC") that they surrender virtually all of the valuable lands they hold for the benefit of the Kaiser Steel Corporation Retirees Benefit Trust ("RBT"). The RBT is the sole provider of Dental, Vision and Death Benefits to approximately 2,000 former hourly employees of the Kaiser Steel Corporation and their surviving spouses.  Plaintiffs contend that the Purchase and Sale Agreement between the parties dated December 1, 2000, ("the Agreement") imposes no such onerous requirement upon them.

2.      Plaintiffs' predecessors, as Trustees of the CMT, and MCC entered into the Agreement in December of 2000 in which it was agreed, in relevant part, that the CMT as seller would cooperate with MCC as Purchaser in MCC's efforts to seek permits, approvals and other entitlements required for the utilization of the property being sold as a limestone mine or quarry.  Specifically such cooperation was to include making available real property for environmental mitigation purposes, up to fifty acres without cost, and additional acreage at a cost of $800.00 per acre ("the Mitigation Obligation").  The said Obligation is to arise when, and only when, MCC attempts to seek the requisite permits, approvals and other entitlements.

3.      The Agreement did not specify, from among the holdings of the CMT or elsewhere, what real property, expressed as acreage or otherwise, was to be made available to meet the Mitigation Obligation.

4.      The CMT landholding, which is extensive and covers approximately sixteen square miles of land located in the San Bernardino Mountains, is composed of lands, some of which the CMT owns in fee, some of which it has successfully

1

patented mining claims upon, and some of which are unpatented mining claims on lands that are in public ownership.

5.     Commencing in or about September, 2008, MCC called upon Plaintiffs to engage in negotiations over which lands would be required to meet the Mitigation Obligation.  At that time and thereafter, Plaintiffs have proposed to MCC that the CMT's Mitigation Obligation could be satisfied by transfer of certain of its lands which are unpatented mining claims and which contain the requisite habitat characteristics.

6.     On or about May 19, 2009, MCC, in writing, rejected the offer of the unpatented mining claims and instead demanded of Plaintiffs that they convey substantially all of CMT's patented mining claims, underlying which are substantial ore deposits which Plaintiffs are counting upon to eventually produce income to continue the uninterrupted provision of Dental, Vision and Death Benefits to the Kaiser retirees.  The demand made by MCC would probably have the further negative effect of causing CMT to lose access to other of its mineable properties with a consequent further loss of revenues needed for benefits purposes.

7.     If forced to comply with MCC's demand, Plaintiffs will be left with landholdings of little, if any, value and thereafter may be unable to continue funding retiree health benefits.

8.     The Agreement does not specify, and the permitting authorities do not require, that patented mining claims and only such claims, can satisfy the Mitigation Obligation.

## JURISDICTION AND VENUE

9.     The Court has diversity jurisdiction over the matters alleged herein pursuant to 28 U.S.C. § 1332.  Plaintiffs are each citizens of the State of California. MCC is a corporation incorporated under the laws of the State of Delaware and has

COMPLAINT FOR DECLARATORY RELIEF
(28 USC § 2201; Fed.R.Civ.Proc. 57)

1  its principal place of business in the State of Nevada.  The amount in controversy

2  exceeds $75,000.00.

3       10.    This Court has jurisdiction over MCC in that it conducts commercial

4  mining operations in this Judicial District and the property it owns which is the

5  subject of the Agreement, and other contiguous property upon which it conducts

6  mining and cement manufacturing operations, are both located in this Judicial

7  District.

8       11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) in that

9  the events giving rise to the claim pleaded herein occurred in this Judicial District.

10

11  **THE PARTIES**

12       12.    Plaintiffs Virginia Mulloy, Al Chavez and Thomas Rabone are the

13  current and acting Trustees of the CMT which is a trust with its principal place of

14  administration located in San Bernardino County, California.

15       13.    Defendant MCC is a corporation incorporated under the laws of the

16  State of Delaware and has its principal place of business in the State of Nevada.  It

17  is engaged in the business of manufacturing cement, including the mining and

18  processing of limestone, in San Bernardino, California.

19

20  **FACTUAL ALLEGATIONS**

21       14.    The CMT and MCC are parties to an Agreement of Purchase and Sale

22  dated December 1, 2000 (herein "the Agreement") under which CMT sold, and

23  MCC purchased, certain property located in the environs of the San Bernardino

24  National Forest for the purpose of mining the limestone deposits located thereon.

25       15.    The Agreement contains the "Representations and Warranties" and

26  "Covenants" of CMT as Seller to cooperate with MCC as Purchaser in MCC's

27  efforts to seek permits, approvals and other entitlements required for the utilization

28  of the property being sold as a limestone mine or quarry.  Specifically such

3

1  cooperation was to include making available real property for environmental

2  mitigation purposes, up to fifty acres, without cost and additional acreage at a cost

3  of $800.00 per acre ("the Mitigation Obligation").

4      16.    The Mitigation Obligation is a duty imposed upon parties conducting

5  mining operations in the San Bernardino Mountains by a regional strategy to which

6  CMT and MCC are signatory, the Carbonate Habitat Management Strategy

7  ("CHMS"), which came about commencing in the late 1990s to protect certain

8  carbonate plant species from destruction caused by mining activities.

9      17.    The Mitigation Obligation is also a duty imposed on the parties by a

10  Memorandum of Understanding ("MOU") dated July 14, 2003, to which CMT and

11  MCC are signatory which has for its purpose, among others, facilitating

12  transactions that directly or indirectly result in land within the CHMS, containing

13  habitat for Carbonate Plants, to be added to a Habitat Reserve.

14      18.    Neither the CHMS nor the MOU imposes upon the CMT the terms

15  now being insisted upon by MCC.

16      19.    Commencing in or about September, 2008, MCC called upon

17  Plaintiffs to engage in negotiations over which lands would be required to meet the

18  Mitigation Obligation.  At that time, Plaintiffs proposed to MCC that the CMT's

19  Mitigation Obligation could be satisfied by transfer of certain of its lands which are

20  unpatented mining claims and which contain the requisite habitat characteristics to

21  satisfy any and all regulatory preconditions to the commencement of MCC's

22  mining operations.

23      20.    On or about May 19, 2009 MCC, in writing, rejected the offer of the

24  unpatented mining claims and instead demanded of Plaintiffs that they convey

25  substantially all of CMT's patented mining claims, underlying which are

26  substantial ore deposits which Plaintiffs are counting upon to eventually produce

27  income to continue the uninterrupted provision of Dental, Vision and Death

28  Benefits to the Kaiser retirees.  Moreover, compliance with these demands would

4

1  deprive CMT of access to other of its valuable mining properties and cause a

2  significant loss of potential value of those properties.

3      21.    In the same writing, MCC demanded that CMT enter into a mitigation

4  land agreement whereby CMT would place in escrow seven of its patented mining

5  claims which collectively are its principal assets, thereby transferring title to such

6  assets to MCC and leaving to CMT the burden of seeking regulatory approval of

7  the use of its unpatented lands as mitigation.  MCC's demand further asserts that, if

8  CMT shall not have complied with these terms, the seven patented mining claims

9  shall pass to MCC in fee.

10     22.    MCC's demands are not supported by the Agreement in that the

11  Agreement is silent on any specific acreage or other measurement requirement nor

12  does it require the transmission of fee lands, or patented mining claims and does

13  not rule out the use of unpatented claims to meet the Mitigation Obligation.

14     23.    The use of unpatented mining claims is fully adequate to satisfy the

15  legal requirements of the CHMS, the MOU and the Agreement's Mitigation

16  Obligation.

17     24.    MCC has threatened to initiate litigation within thirty days of its

18  May 19, 2009 letter to compel CMT to surrender its seven patented mining claims

19  if Plaintiffs do not yield to its improper demand.

20

21                          **CLAIM FOR RELIEF**

22     25.    Plaintiffs hereby reallege and incorporate by reference paragraphs 1

23  through 24 as if fully set forth herein.

24     26.    An actual controversy has arisen and now exists between the parties

25  relating to the nature and extent of Plaintiffs' and CMT's duty to meet the

26  Mitigation Obligation set forth herein and whether such obligation would force the

27  loss of CMT's major assets, particularly in light of the Agreement's failure to

28  impose any such onerous condition for its performance, the lack of any

5

1   supervening regulatory requirement compelling such result and the vague and

2   uncertain nature of the Mitigation Obligation as set forth in the Agreement.

3        27.    A declaratory judgment is necessary in that Plaintiffs contend the

4   demands of Defendant as set forth hereinabove are not supported by the

5   Agreement or by any other legal constraint, whereas Defendant asserts that

6   Plaintiffs must convey in fee to it all of CMT's valuable assets despite any

7   contractual or other duty that would require such a confiscatory taking of Plaintiff

8   Trustees' land.

9        28.    Judgment is also necessary for the Court to declare that the Mitigation

10  Obligation provisions of the Agreement may not be construed and are not

11  enforceable as obliging Plaintiffs to convey valuable trust lands, leaving them with

12  land of little value, as contended by Defendant.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment:

A.      That the Court declare that the Mitigation Obligation of the Agreement permits Plaintiffs to satisfy their duty thereunder by conveying to Defendant unpatented environmental mitigation land in accordance with the terms of the Agreement and does not require them to comply with Defendant's demand;

B.      For attorneys' fee and costs as permitted by law; and

C.      For such other and further relief as the Court may deem just and proper.

DATED:  June __18__, 2009

ROBERT M. DOHRMANN
SCHWARTZ, STEINSAPIR, DOHRMANN
& SOMMERS LLP

BY_____
ROBERT M. DOHRMANN
Attorneys for Plaintiffs
Virginia Mulloy, Al Chavez and Thomas Rabone